UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIGOBERTO CHO-CRUZ (A-Number: 240-398-082),<br><br>        Petitioner,<br><br>    v.<br><br>WARDEN, CALIFORNIA CITY DETENTION FACILITY,<br><br>        Respondent. | Case No.  1:26-cv-4019-DAD-JDP<br><br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Petitioner Rigoberto Cho-Cruz entered the United States on an unknown date and was detained by ICE in 2026.  Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner entered the United States on an unknown date.[1]  ECF No. 7-1 at 1.  There is no indication that he has applied for asylum or lawful permanent residence.  In March 2026, local police arrested petitioner for leaving the scene of a crash involving damage to property.  *Id*. at 2.

---

[1] In June 2021, Customs and Border Protection encountered petitioner and removed him to Mexico.  *Id*. at 3.  There is no indication that he previously had an order of removal or that the government has reinstated an order of removal.  *See generally id*.; ECF No. 7.

1

That charge is pending.

After petitioner's arrest in March 2026, ICE detained him. *Id*. Since his detention, petitioner has not been provided a bond hearing, and the government maintains that he is subject to mandatory detention. *See* ECF No. 7 at 2.

**Procedural History**

On May 26, 2026, petitioner filed a petition for writ of habeas corpus.[2] ECF No. 1. On June 3, 2026, respondent filed an opposition. ECF No. 7. The matter is submitted such that I may issue findings and recommendations. *See* ECF No. 6 at 2; Local Rule 302(c)(17).

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Respondent argues that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), as opposed to discretionary detention under 8 U.S.C. § 1226(a). ECF No. 7 at 1. Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). Critically, no

---

[2] Petitioner concurrently filed a motion for the appointment of counsel, ECF No. 3. In light of my recommendation that the case be closed, this motion will be denied as moot.

2

bond hearing is provided for a noncitizen detained under this section. *Id.* By contrast, "[u]nder § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

For decades, the government applied section 1226(a)—and not section 1225(b)(2)(A)—to noncitizens apprehended in the interior of the United States. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). In July 2025, however, the Department of Homeland Security ("DHS") revisited its legal position and now maintains that all applicants for admission within the meaning of section 1225(a) are subject to mandatory detention under section 1225(b). Respondent urges the court to follow suit and find that petitioner is subject to mandatory detention under 1225(b)(2). ECF No. 7 at 2.

This issue is one of statutory interpretation, and so I begin with the plain text of the Immigration and Nationality Act. *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019). Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). There is only one exception to mandatory detention: a noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

While the text of section 1225(b)(2)(A) limits its reach to applicants "seeking admission," section 1226(a) does not include the same qualifying language. Section 1226(a) provides that, for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."[3] 8 U.S.C.

---

[3] Section 1226(c) mandates detention of noncitizens falling into "one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289. There is no argument or evidence suggesting that this section applies to petitioner.

3

§§ 1226(a)(1)-(2).

The government urges the court to read section 1225(b)(2)(A) as using the terms "applicant for admission" and "seeking admission" interchangeably. ECF No. 7 at 2. According to the government, all noncitizens who have not been admitted to the United States—i.e., "applicants for admission"—are necessarily "seeking admission" for purposes of section 1225(b)(2)(A). *Id*. Thus, the government contends, section 1225(b)(2)(A) applies to noncitizens who are "applicants for admission." *Id*.

I find that the government's interpretation violates the rule against surplusage in three ways. First, for section 1225(b)(2)(A)'s mandatory detention to apply, "a noncitizen must (1) be an applicant for admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal. Oct. 16, 2025). If, as the government argues, all "applicants for admissions" were also individuals "seeking admission," the phrase "seeking admission" would be unnecessary. The government's reading, therefore, runs contrary to the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.").

Second, the government's reading cannot be squared with the text of section 1226. Were it possible to interpret section 1225(b)(2)(A) in the manner favored by the government, section 1226(a)'s requirement that noncitizens be afforded bond hearings—arguably the section's centerpiece—would serve no purpose because the government would be allowed to detain all "applicants for admission" under section 1225(b)(2)(A). Further, as noted, under section 1226(c), Congress mandated the detention of certain categories of noncitizens. 8 U.S.C. § 1226(c). If, as the government now contends, section 1225(b)(2)(A) can be applied to all noncitizens who are inadmissible, section 1226(c) would also be superfluous.

Third, the Laken Riley Act ("LRA")—passed in January 2025—would also be rendered superfluous. The LRA amended section 1226(c) to add new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3,

4

2025).  Under the government's theory of section 1225(b)(2)(A), the LRA would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225(b)(2)(A), the amendment would be surplusage.  "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Respondent's theory, essentially, is that both sections 1226(a) and 1226(c) have been taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy.  This interpretation collides squarely with the rule against surplusage.  *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

I also find that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025.  As noted, the government previously interpreted these provisions differently.  Prior agency practice, though not dispositive, may inform this court's determination of law.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is.").  Other courts have emphasized the persuasive value of the DHS's "longstanding agency practice."  *See Rodriguez*, 779 F. Supp. 3d at 1259 ("Congress enacted the LRA against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, I note that arguments substantially similar to those made by the government here have been rejected by a large majority of district courts nationwide.  *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  The government's argument also runs contrary to *Jennings*, which held that section 1225(b) "applies primarily to aliens seeking entry into the United States," whereas sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ."  583 U.S. at 289, 297.  While the government's interpretation was endorsed by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the persuasive power of an agency ruling is limited.  *See Loper Bright*, 603 U.S. at 400.

Accordingly, because petitioner was detained in the interior of the United States, I find that his detention is governed by section 1226(a) and not, as respondent argues, by section 1225(b).  Given this finding, I must determine whether the appropriate relief is release or a bond hearing.  Petitioner argues that release is the proper remedy.  ECF No. 1 ¶ 4.  Respondent argues that a bond hearing is the appropriate relief.  ECF No. 7 at 4.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention.").  Moreover, where the government has erroneously applied section 1225(b) to a petitioner, courts have ordered immediate release.  *See, e.g.*, *Morillo v. Albarran*, No. 1:25-cv-1533-DJC-AC, 2025 WL 3190899, at *5 (E.D. Cal. Nov. 15, 2025).  In *Feng v. Lyons*, the court held that a delay "in providing the statutorily mandated bond hearing violates [a petitioner's] due process rights" and found that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right."  No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (citations omitted).

Here, petitioner has no criminal convictions, and while he has been charged for leaving the scene of a crash involving damage to property, respondent does not argue that he therefore is a danger to the community or a flight risk.  *See* ECF No. 7 at 1; ECF No. 7-1 at 2.  Moreover, petitioner alleges that the incident occurred when "another car invaded [his] path," which caused him to crash into a tree "2 blocks away from" his house.  ECF No. 1 ¶ 23.  Petitioner alleges that he "left all [his] property and IDs on [his] car" and walked towards his house "to find some help and make a phone call."  *Id*.  Petitioner asserts that he left the scene of the accident for "10 minutes," and when he returned, "police officers arrived and arrested [him] immediately."  *Id*.  Notably, respondent neither contests these allegations nor provides an alternative account of the accident, such as by providing the police report.  *See generally* ECF No. 7.

6

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for petitioner's detention. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the provision of a bond hearing is constitutionally insufficient. *See Feng*, 2026 WL 472635, at *1.

**Conclusion**

Accordingly, it is hereby ORDERED that petitioner's motion for the appointment of counsel, ECF No. 3, is DENIED as moot.

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 240-398-082) from its custody. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter in accordance with 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:   June 11, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE